IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ERNEST RICHARDS, II,**

     **Plaintiff,**

**v.**                                         **Civil Action No. 1:18-cv-00158**
                                               **Consolidated with 1:18-cv-00157**

**OCTANE ENVIROMENTAL, LLC,**
**an Ohio limited liability company;**

     **Defendant.**

## AMENDED JOINT PRETRIAL MEMORANDUM

NOW COMES, the Plaintiff, Ernest Richards, II, by counsel, Christopher A. Brumley, Michael Secret, Evan Aldridge and the law firm of Flaherty Sensabaugh Bonasso PLLC; and the Defendant, Octane Environmental, LLC (hereinafter "Octane"), by counsel Kenneth Hopper, Johnnie E. Brown, and the law firm of Pullin, Fowler, Flanagan, Brown & Poe, PLLC; and, pursuant to the Court's November 7, 2022, Order Granting Joint Motion to Schedule Status Conference, hereby submit this Amended Joint Pre-trial Order:

(1) The Pretrial Disclosures Required by Fed. R. Civ. P. 26(a)(3) and any objections thereto:

i. ***Plaintiffs' Witnesses***: On February 2, 2023, the Plaintiff filed his Final List of Witnesses and Exhibits. On February 13, 2023, the Defendant filed its objections to the Plaintiff's List of Witnesses and Exhibit. As contained within those filings the Plaintiff expects to call the following as witnesses in this matter.

    a.   Identification of Witnesses

1. Rick Richards
   *To be contacted through counsel*
   Will be called at trial. Mr. Richards is expected to testify as to the policies and procedures in place while Ernest Richards worked at Octane, the equipment that Ernest Richards purchased that Octane still retains, when Ernest Richards gave his two weeks notice at Octane, and the circumstances of Ernest Richards departure from Octane.

2. Ernest Richards, II
   *To be contacted through counsel*
   Will be called at trial. As the Plaintiff, Ernest Richards will be able to provide direct testimony in support of his allegations in this matter such as the items that he purchased that Octane still retains, the value of said items, the policies and practices of Octane while he worked there, and his activities regarding his final weeks at Octane where he provided his two-weeks notice to his direct supervisor, Rick Richards. He will also be able to testify

3. Jacob Richards
   2003 White Tail Court
   Morgantown, WV 26508
   Will be called at trial. Mr. Richards is expected to testify as to Ernest Richards' final weeks at Octane as well as Octane's policies and procedures during his time working there.

4. Jason Richards
   520 Crawford Road
   Crawford, WV 26343
   Will be called at trial. Mr. Richards is expected to testify as to Ernest Richards' final weeks at Octane as well as Octane's policies and procedures during his time working there.

5. Craig Stacy
   *To be contacted through counsel*
   May be called at trial. Mr. Stacy is expected to testify as to the formation of Octane, the hiring of Ernest Richards as an Octane employee, the equipment that Ernest Richards brought to Octane that Octane retains, the policies and procedures at Octane during Ernest Richards' time working there, and the final weeks of Ernest Richards' employment with Octane.

6. Terence Seikel
   *To be contacted through counsel*
   Will be called at trial. Mr. Seikel is expected to testify as to the formation of Octane, the hiring of Ernest Richards as an Octane employee, the equipment that Ernest Richards brought to Octane that Octane retains, the policies and procedures at Octane during Ernest Richards' time working there, and the final weeks of Ernest Richards' employment with Octane.

7. Joseph Seikel
   *To be contacted through counsel*
   Will be called at trial. Mr. Seikel is expected to testify as to the formation of Octane, the hiring of Ernest Richards as an Octane employee, the equipment that Ernest Richards brought to Octane that Octane retains, the policies and procedures at Octane during Ernest Richards' time working there, and the final weeks of Ernest Richards' employment with Octane.

8. Amanda Hunt
   119 Hill Street
   Bridgeport, WV 26330
   Will be called at trial. It is anticipated that Ms. Hunt will provide testimony related to Octane policies and procedures while she worked there.

9. Aaron Giles
   107 June Lane
   Morgantown, WV 26508
   Will be called at trial. It is anticipated that Mr. Giles will provide testimony related to Octane policies and procedures while he worked there.

10. Alyssa Larry Moate
    6388 W. Veterans Memorial Highway
    Bridgeport, WV 26330
    (681) 204-6494
    Will be called at trial. Ms. Moate was the Head of Human Resources during her time at Octane and is expected to testify as to the policies and procedures of Octane including, but not limited to, those that were communicated to the West Virginia Division of Labor.

11. Sheila Montoney
    West Virginia Division of Labor, Wage and Hour Section
    1900 Kanawha Boulevard East
    State Capitol Complex – Building 3, Room 200
    Charleston, WV 25305
    Will be called at trial. It is anticipated that Ms. Monteony will be able to testify as to representations made by Octane related to its policies and procedures involving the payout of accrued but unused vacation pay during Rick Richards' time at Octane as well as the contents of her investigation as to Octane's policies and procedures regarding vacation pay in the relevant time period.

12. Joseph Dugan
    Water Transfer Solutions
    2 Four Coins Drive
    Canonsburg, PA 15317
    (724) 514-7736

Will be called at trial. Mr. Dugan is the founder of Water Transfer Solutions ("WTS") which is Ernest Richards' current employer. Mr. Dugan will be able to testify regarding the hiring of Ernie Richards to WTS and the timing of his hiring compared to Ernest Richards' departure from Octane. Specifically, he will also be able to testify as to the bonus paid to Ernest Richards upon his employment with WTS. Additionally, Mr. Dugan will be able to testify as to the equipment and pipe that he sold to Ernest Richards that is the subject of Ernest Richards' conversion claim.

13. Paula Duke
    Water Transfer Solutions
    2 Four Coins Drive
    Canonsburg, PA 15317
    (724) 514-7736
    Will be called at trial. Ms. Duke is an employee of WTS and is expected to testify regarding the timing of Ernest Richards' hiring and the bonus paid to him upon his employment at WTS.

14. Adam Barr
    928 Spencer Road
    LeRoy, WV 25271
    Will be called at trial. Mr. Barr is a former employee of Blue Ridge Mountain Resources and was in charge of the Farley Pad well site that Octane provided water transfer services to. It is anticipated that Mr. Barr will be able to testify that Ernest Richards did not steal any pipe from the Farley Pad project and will also be able to testify as to the general scope of the pipe used on the project.

15. Delbert "Sonny" Hickman
    6000 Walker Road
    Walker, WV 26180
    May be called at trial. It is anticipated that Mr. Hickman will be able to testify as to the policies and procedures of Octane during his time working there and the equipment that was purchased by Ernest Richards which Octane still retains.

16. Robert Terry
    P.O. Box 632
    Princeton, WV 24740
    May be called at trial. It is anticipated that Mr. Terry will be able to testify as to the activities that Ernest Richards engaged in on the Farley Pad well site.

17. Eric Cartwright
    Reliable Oil & Gas Transport
    646 Hall Road
    Buckhannon, WV 26201
    May be called at trial. It is anticipated that Mr. Terry will be able to testify as to the activities that Ernest Richards engaged in on the Farley Pad well site.

18. Jamie Jo Gannon
    PayChex
    5 Penn Center Blvd., Suite 101
    Pittsburgh, PA 15276
    (412) 787-1666
    May be called at trial. It is anticipated that Ms. Gannon will be able to testify as to the policies and procedures at Octane and the formation of Octane's Employee Handbook.

19. Susan Nagel
    PayChex
    5 Penn Center Blvd., Suite 101
    Pittsburgh, PA 15276
    (412) 787-1666
    May be called at trial. It is anticipated that Ms. Nagel will be able to testify as to the policies and procedures at Octane and the formation of Octane's Employee Handbook.

20. Jason Henderson
    Energy Resource Group, LLC
    P.O. Box 430
    Bridgeport, WV 26330
    May be called at trial. It is anticipated that Mr. Henderson will be able to testify as to Ernest Richards' employment with Energy Resource Group, LLC, and his departure from Octane.

21. David Bannister
    414 Robinson Street
    Fairmont, WV 26554
    May be called at trial. It is anticipated that Mr. Bannister will provide testimony related to Octane policies and procedures while he worked there as well as Ernest Richards' actions upon his departure from Octane.

22. Chris Atkins
    Address unknown
    May be called at trial. It is anticipated that Mr. Atkins will provide testimony related to Octane policies and procedures while he worked there as well as Ernie Richards' actions upon his departure from Octane.

23. Karina Kendrick, Esquire
    McDonald Hopkins, LLC
    600 Superior Avenue, Suite 2100
    Cleveland, OH 44114
    Expected be called at trial. It is anticipated that Ms. Kendrick will provide testimony related to Octane policies and procedures during the time Ernest Richards worked there as well as communications with the West Virginia Division of Labor.

24. Johnny Goff
    Octane Environmental, LLC
    6388 W. Veterans Memorial Highway
    Bridgeport, WV 26330
    May be called at trial. It is anticipated that Mr. Goff will provide testimony related to Octane policies and procedures while he worked there as well as Ernest Richards' actions upon and relating to his departure from Octane.

25. Harold Farnsworth
    Octane Environmental, LLC
    6388 W. Veterans Memorial Highway
    Bridgeport, WV 26330
    May be called at trial. It is anticipated that Mr. Farnsworth will provide testimony related to Octane policies and procedures while he worked there as well as Ernest Richards' actions upon his departure from Octane.

26. Cody Richards
    5481 WV Hwy 18
    Troy, WV 26443
    May be called at trial. It is anticipated that Mr. Richards will provide testimony related to Octane policies and procedures while he worked there as well as Ernest Richards' actions upon his departure from Octane.

27. Eric Garcia
    Octane Environmental, LLC
    6388 W. Veterans Memorial Highway
    Bridgeport, WV 26330
    May be called at trial. It is anticipated that Mr. Garcia will provide testimony related to Octane policies and procedures while he worked there as well as Ernest Richards' actions upon his departure from Octane.

28. Ryan Neumeyer, Esq.
    McDonald Hopkins, LLC
    6513 St. Augustine, N.W.
    Canton, OH 44718
    May be called at trial. It is anticipated that Ms. Neumeyer will provide testimony related to Octane policies and procedures during the time Ernest Richards worked there as well as communications with the West Virginia Division of Labor.

   **ii.** *Defendant's Witnesses***:** On February 2, 2023, the Defendant filed its Final List of

Witnesses and Exhibits. On February 13, 2023, the Plaintiff filed his objections to the

Defendant's List of Witnesses and Exhibits. As contained within those filings, the Defendant expects to call the following as witnesses in this matter.

1. Rick Richards
   2003 Whitetail Court
   Morgantown, WV 26508

   It is anticipated Rick Richards will testify about his different causes of action and the facts related to the same. As such, it is anticipated Rick Richards will testify about his personal belongings which are the subject of his claim for conversion. It is anticipated Rick Richards will testify about the wages he was earning while working at Octane, his alleged first day of employment as the same is at the center of his Wage Payment and Collection Act (hereinafter "WPCA") claim, and his perceived entitlement to payment for unused paid-time-off (hereinafter "PTO"). It is anticipated Rick Richards will testify about his final days of employment with Octane, his actions during these days, his resignation from Octane, and the events which occurred subsequent thereto. Finally, it is anticipated he will testify about his actions taken while using Octane computers.

2. Plaintiff, Ernest Richards, II
   5481 W.Va. Highway 18
   Troy, WV 26445

   It is anticipated Ernest Richards, II, (hereinafter "Ernie Richards") will testify about his different causes of action and the facts related to the same. As such, it is anticipated Ernie Richards will testify about the events leading up to his employment with Octane. It is also anticipated Ernie Richards will testify about his alleged personal belongings which are the subject of his claim for conversion and the events related to the same. It is anticipated Ernie Richards will testify about the wages he was earning while working at Octane, his alleged last week of employment as the same is at the center of his WPCA claim, and his perceived entitlement to payment for unused PTO. It is anticipated Ernie Richards will testify about his final days of employment with Octane, his actions during these days, his resignation/termination from Octane, and the events which occurred subsequent thereto. Finally, it is anticipated he will testify about his actions taken while using Octane computers.

3.  Robert Terry
    P.O. Box 630
    Princeton, WV 24740

    It is anticipated Mr. Terry will testify about the events which occurred on December 12, 2017, which included, but is not limited to Ernie Richards being videotaped moving a pile of piping.

4.  Eric Cutwright
    284 Pointe Dr.
    Buckhannon, WV 26201

    It is anticipated Mr. Cutwright will testify about the events which occurred on December 12, 2017, which included, but is not limited to Ernie Richards being videotaped moving a pile of piping.

5.  Joseph Seikel
    Octane Environmental, LLC
    6388 W. Veteran's Memorial Highway
    Bridgeport, WV 26330

    It is anticipated Joseph Seikel will testify about his role in Octane while Rick Richards was employed as Octane's general manager. It is anticipated Joseph Seikel will testify about his interactions and conversations with Rick Richards and about Rick Richards' job performance. It is also anticipated Joseph Seikel will testify about the facts related to Rick and Ernie Richards' conversion claims. It is anticipated Joseph Seikel will testify about Octane's policies and practices related to paying employees for unused PTO. It is anticipated Joseph Seikel will testify about what occurred in May of 2018 with Octane's employees as a result of numerous employees going to work for one of Octane's competitors. Finally, it is anticipated Joseph Seikel will testify about Octane's Counterclaim and the damages incurred by Octane as a result thereof. As such, it is anticipated Joseph Seikel will testify about various actions of the Richards which include, but are not limited to, working for competitors, deleting company computer contents, taking information off of certain company computers, loss in profits due to Rick Richards' actions, and the resignation of numerous Octane employees.

6.  Kayla Fordyce
    Octane Environmental, LLC
    6388 W. Veteran's Memorial Highway
    Bridgeport, WV 26330

    It is anticipated Ms. Fordyce will testify about the formation of Octane and the role of Rick Richards as Octane's general manager and his ability to make and/or direct unilateral alterations to Octane's payroll. It is anticipated Ms.

Fordyce will testify about her knowledge of Octane's policy with respect to paying employees for unused PTO. Finally, she may testify about the manner in which Rick Richards functioned in his role as Octane's general manager.

7.  Eric Garcia
    Octane Environmental, LLC
    6388 W. Veteran's Memorial Highway
    Bridgeport, WV 26330

    It is anticipated Mr. Garcia will testify about the formation of Octane and the role of Rick Richards as Octane's general manager and his ability to make and/or direct unilateral alterations to Octane's payroll. It is anticipated Mr. Garcia may testify about the message which he viewed from Ernie Richards. It is anticipated Mr. Garcia will testify about his knowledge of Octane's policy with respect to paying employees for unused PTO. Finally, it is anticipated Mr. Garcia will testify about the manner in which Rick Richards functioned in his role as Octane's general manager.

8.  Holly (Henss) Weaver
    148 Stroupe Hill Rd.
    Lost Creek, WV 26385

    It is anticipated Ms. Henss will testify about the formation of Octane and the role of Rick Richards as Octane's general manager, his ability to make and/or direct unilateral alterations to Octane's payroll, and his first day of employment with Octane. Finally, it is anticipated Ms. Henss will testify about the manner in which Rick Richards functioned in his role as Octane's general manager.

9.  Mike Canup
    1375 Euclid Avenue, Suite 400
    Cleveland, Ohio 44115

    It is anticipated Mr. Canup may testify about the forensic reports which were generated after analyzing the contents of various Octane company computers.

The following witnesses were listed as witnesses who may testify if necessary:

1.  Alyssa Moate
    320 Double Eagle Lane
    Maidsville, WV 26541

    It is anticipated Ms. Moate will testify about her interaction with Ernie Richards while both worked for Octane. It is anticipated Ms. Moate will testify about her understanding of Octane's policies and procedures regarding

payment for unused PTO. If necessary, it is also anticipated Ms. Moate will testify about her interaction with the West Virginia Division of Labor.

2. Joseph Dugan
   50 Cheslock Rd.
   Canonsburg, PA 15317

   It is anticipated Mr. Dugan will testify about his interaction with Ernie Richards at his home when he allegedly sold equipment and pipe to Mr. Richards.

3. Paula Duke
   Water Transfer Solutions
   2 Four Coins Dr.
   Canonsburg, PA 15317

   It is anticipated Ms. Duke may testify about Ernie Richards' employment with Water Transfer Solutions and his salary with said company. She may also testify about documents in Ernie Richards' employment file.

4. Delbert Hickman
   6000 Walker Road,
   Walker, West Virginia  26180

   It is anticipated Mr. Hickman will testify about his employment with Octane as well as his interaction with Ernie Richards. He may also testify about the pipe allegedly purchased by Ernie Richards.

5. Adam Barr
   928 Spencer Road
   Leroy, WV 25252

   It is anticipated Mr. Barr will testify about various well-pad sites near Middlebourne, WV. This may include testimony about how much pipe was moved from various well-pad sites.

6. Elizabeth Meese
   Heat Waves Hot Oil Services
   436 Green Valley Rd.
   Carmichaels, PA 15320

   It is anticipated Ms. Meese may testify about Ernie Richards' employment with Heat Waves Water Management: which was Ernie Richards' employer prior to Octane.

**B. Witness by Deposition:** The parties anticipate calling Alyssa Most and Robert Terry by deposition. Additionally, counsel for Ernest Richards has very recently been made aware that Mr. Joe Dugan has had extreme complications from recent surgery and may be unable to testify at trial. Therefore, it is anticipated that Mr. Dugan's prior deposition in this matter will need to be played and/or read at trial.

**C. Identification of Documents**

*i. Plaintiffs' Exhibits:*

Plaintiffs expect to use the following exhibits in their respective cases.

1.	August 28, 2018, West Virginia Division of Labor letter to Octane regarding audit conducted into Aaron Giles and Amanda Hunt vacation pay.

2.	February 28, 2018, email from Joseph Seikel to handbook team regarding unused PTO.

3.	June 12, 2018, email exchange between Joseph Seikel, Alyssa Larry, Terence Seikel, and Johnny Goff regarding DOL claims.

4.	June 12, 2018, email from Sheila Montoney to Alyssa Larry regarding DOL claim filed by Aaron Giles.

5.	May 31, 2018, DOL investigation report as to wage payment claims of Aaron Giles and Amanda Hunt.

6.	January 18 version of Octane draft employee handbooks.

7.	March 18 version of Octane draft employee handbooks.

8.	 April 18, 2018 email from Jaime Gannon regarding handbook approval.

9.	April 18 version of Octane draft employee handbooks.

10.	June 18 version of Octane draft employee handbooks.

11. Handbook receipt form filled out by Alyssa Larry on June 20, 2018.

12. August 27, 2019, Affidavit of Joseph Seikel regarding unused PTO of Octane employees.

13. Octane employee last check detail.

14. Richards' Octane employee profile.

15. Octane answer to counterclaim.

16. Paid invoices between Blue Ridge Mountain Resources and Octane for Farley Pad job.

17. Richards pay records at Octane.

18. Octane handbook development worksheet.

19. Ernest Richards offer letter at Octane (part of employee file).

20. June 13, 2018, email from Karina Kendrick to Shield Montoney regarding violations of the WPCA.

21. DOL investigation report of Octane.

22. West Virginia Division of Labor Complaint and Investigative Procedures Handbook.

23. February 16, 2018, email from Rick Richards to Joseph Seikel regarding equipment bought by Richards for job site.

24. February 21, 2018, email from Joseph Seikel to Rick Richards and Ernest Richards, II.

25. December 1, 2017, email from Jaime Gannon to Joseph Seikel regarding handbook worksheet.

26.     November 27, 2017, email from Joseph Seikel to Susan Nagel regarding PayChex services.

27.     November 5, 2018, email from Jaime Gannon to Joseph Seikel regarding handbook draft.

28.     Richards' expense report from November of 2017 until January of 2018.

29.     Richards employee file from Water Transfer Solutions, expected to be offered at trial.

30.     Octane employee handbook acknowledgement form.

31.     August 27, 2019, Affidavit of Joseph Seikel regarding unused PTO of Octane employees.

32.     August 28, 2018, West Virginia Division of Labor letter to Octane regarding audit conducted into Aaron Giles and Amanda Hunt vacation pay.

33.     Paid invoices between Blue Ridge Mountain Resources and Octane for Farley Pad job.

34.     Pictures of converted equipment originally purchased by Richards.

35.     List of equipment purchased from Joseph Dugan written by Richards.

36.     Octane Paid Time Off Advance Program (part of employee file).

37.     Flaherty Sensabaugh Bonasso, PLLC, letter to Octane regarding Richards wages.

38.     Octane Paychex App (part of employee file).

Plaintiffs may use the following exhibits in their respective cases if the need arises.

1.     Text exchange between Richards and employees of EQT.

2.     All responses to any parties' written discovery requests in this matter.

3.     October 4, 2017, email from Joseph Seikel to Rick Richards and Amanda Hunt regarding Summit Cloud software.

13

4.     Master Services Agreement between Triad Hunter, LLC, and Octane Environmental, LLC.

5.     Richards Wage Statements (part of employee file).

6.     Richards Worker Profile (part of employee file).

7.     Richards Paychex information (part of employee file).

8.     Richards Octane Employee Earnings Record (part of employee file).

9.     Any and all documents not named produced in discovery or in any deposition taken in this matter.

### iii. Defendant's Exhibits:

1.     December 12, 2017, video from Robert Terry showing skid steer being operated by Ernest Richards, II.

2.     December 12, 2017, Work Order Invoice from Reliable Oil and Gas Transport, LLC.

3.     Ernest Richards, II, Investment report documents from Fidelity Investment from August 2017 to December 2017.

4.     Ernest Richards, II, bank statements from Calhoun Banks from June 15, 2017, to December 15, 2017.

5.     Summary of Ernest Richards, II, Calhoun Bank account activity.

6.     Ernest Richards, II, List of Equipment and related email correspondence.

7.     Receipts/Invoices for Equipment purchased by Octane Environmental, LLC.

8.     May 1, 2018, text message from Ernest Richards, II, to employees of EQT Corp.

9.     Summary of Computer usage of the laptop issued to Ernest Richards, II.

10.     Summary of email usage of the laptop issued to Ernest Richards, II by Octane Environmental, LLC.

11.     Check details from Water Transfer Solutions for Ernest Richards and Timeline Illustrating Payments and Overlap of Work History.

14

12. Ernest Richards' personnel file from Water Transfer Solutions.

13. October 29, 2017, email correspondence from Rick Richards to Ernest Richards, II, and the attachment to this email which was an employment offer letter from Rick Richards to Ernest Richards, II.

14. February 28, 2018, email from Joseph Seikel to Susan Nagel.

15. Octane Environmental, LLC, Last Check Detail summary for employees who left Octane's employment from October 2016, to present.

16. First Draft of Octane Environmental, LLC's Employee Handbook.

17. Second Draft of Octane Environmental, LLC's Employee Handbook.

18. Third Draft of Octane Environmental, LLC's Employee Handbook.

19. Final Version of Octane Environmental, LLC's Employee Handbook.

20. May 23, 2018, correspondence from Chris Brumley to James Boutrous, II.

The Defendant may use the following as exhibits in this matter if the need arises.

1. January 1, 2018, Work Order Invoice from Reliable Oil and Gas Transport, LLC.

2. Summary of email usage of the laptop issued to Ernest Richards, II by Octane Environmental, LLC.

3. May 23, 2018, correspondence from Plaintiff's counsel to James Boutrous.

4. Summary of Rick Richards' Octane Environmental, LLC, credit card activity.

5. Google earth screenshots of Middlebourne, West Virginia.

6. Octane Environmental, LLC, corporate credit card agreement signed by Ernest Richards, II.

7. Documents Related to Ernest Richards, II, being reimbursed for company expenses.

8. Various emails and text messages from Ernest Richards, II, regarding expenses reimbursement requests.

9. Ernest Richards' paychecks from Octane Environmental, LLC.

15

10. Ernest Richards' Employment Timeline 2017/2018.

**(2) <u>Contested Issues of Law Requiring a Ruling Before Trial</u>**

The Court has ruled on the pending Motions in Limine. However, many contested issues of law appears to still exist given the objections asserted by the parties to witness and exhibit lists, voir dire, verdict forms, and jury instructions.

**(3) <u>A realistic, brief statement by counsel for plaintiff(s) and third-party plaintiff(s) of essential elements that must be proved to establish any meritorious claim remaining for adjudication and the damages or relief sought, accompanied by supporting legal authorities.</u>**

**A) <u>Plaintiff's statement of elements to be proved and the damages and relief sought:</u>**

Plaintiff Ernest Richards asserts the following causes of action against Octane Environmental, LLC: (i) conversion and (ii) violation of the West Virginia Wage Payment and Collection Act.

*Conversion:*

Plaintiff Ernest Richards will establish that Defendant Octane Environmental, LLC wrongfully exerted dominion over Ernest Richards property when it refused to allow Ernest Richards the opportunity to collect his personal property Octane Environmental, LLC. This personal property includes but is not limited to various pipes, valves, hoses, meters, flanges, and several other items. Ernest Richards will be able to testify that he purchased this property for $30,000.00 from Joseph Dugan and also the value of the property in the current day. In West Virginia, Conversion may be proved in three ways: (1) by a tortious taking; (2) by any use or appropriation to the use of the defendant indicating a claim of right in opposition to the rights of the owner; or (3) by a refusal to give up the possession to the owner on demand. *Shamblin's*

*Ready Mix, Inc. v. Eaton Corp*., 819 F.2d 1139 (4th Cir.1987) (unpublished) (citing *Haines v. Cochran Bros*., 26 W.Va. 719, 723–24 (1885)).

*West Virginia Wage Payment and Collection Act:*

Plaintiff Ernest Richards brings two claims under the West Virginia Wage Payment and Collection Act (hereinafter "the WPCA"). First, Plaintiff Ernest Richards will demonstrate that he was not timely paid his paycheck on his last day of employment. It is undisputed that Octane employed Richards until May 11, 2018, when he was terminated. Considering his final date employed, Octane should have remitted his final paycheck on May 18, 2018. However, Ernest Richards was not paid until June 5, 2018, after his attorneys contacted Octane and demanded payment. West Virginia Code § 21-5-4(c) requires an employee's final paycheck to be delivered on the next regular pay day after separation from employment. Octane failed to do this, and thus Ernest Richards is entitled to double his amount owed in wages as well as an award of attorneys' fees pursuant to the WPCA.

Second, Plaintiff Ernest Richards, II, will demonstrate that Octane failed to rightfully pay him his unused but accrued vacation pay at the end of his employment. Furthermore, Plaintiff Richards will be able to show that he was not aware of any unwritten policy maintained by Octane requiring the payment of unused but accrued vacation pay only when an employee gives two-weeks notice of his departure. Finally, Plaintiff Richards will be able to show that even if Octane did have an unwritten policy regarding the payout of unused but accrued vacation pay, he is still entitled to such pay as he gave two weeks notice of his resignation from Octane to his supervisor prior to him leaving Octane.

The West Virginia Wage Payment and Collection Act is a statutory claim, the triggering event which states as follows:

> Whenever an employee quits or resigns, the person, firm or corporation shall pay the employee's wages no later than the next regular payday, either through the regular pay channels or by mail if requested by the employee, except that if the employee gives at least one pay period's notice of intention to quit the person, firm or corporation shall pay all wages earned by the employee at the time of quitting.

<u>See</u> W. Va. Code 21-5-4(c). Furthermore, the WPCA requires payment for wages in the manner prescribed below:

> (a) Every person, firm or corporation doing business in this state, except railroad companies as provided in section one of this article, shall settle with its employees at least twice every month and with no more than 19 days between settlements, unless otherwise provided by special agreement, and pay them the wages due, less authorized deductions and authorized wage assignments, for their work or services.

> W. Va. Code 21-5-3(a).

West Virginia Code § 21-5-12(b) mandates that "[t]he Court in any action brought under this article may, in the event that any judgment is awarded to the plaintiff or plaintiffs, assess costs of the action, including reasonable attorney fees against the defendant." *See also Shaffer v. Fort Henry Surgical Assocs., Inc*., 215 W. Va. 453, 459 n. 16, 599 S.E.2d 876, 882 n. 16 (2004) (holding that an award "under W.Va.Code § 21–5–1(c), liquidated damages in the form of thirty day's wages, reasonable attorneys fees and costs.").

In order for an unwritten policy regarding the payout of accrued but unused vacation pay to be effective, the subject employees must be aware of the alleged unwritten policy. *See Gress v. Petersburg Foods, LLC*, 592 S.E.2d 811 (W. Va. 2003); *see also Howell v. City of Princeton*, 559 S.E.2d 424 (W. Va. 2001).

**B) Defendant's Statement of Elements to be Proved for Meritorious Defense:**

Plaintiff bears the burden of proof with respect to each of their causes of action. As for Ernie Richards' claim for conversion, one key fact is also at the heart of this claim: at no point in time has Ernie Richards produced evidence proving ownership over his alleged personal belongings. According to the West Virginia Supreme Court of Appeals, "Critical to any claim for conversion, however, is title or right of possession." *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W. Va. 577, 587, 746 S.E.2d 568, 578 (W.Va. 2013). As Plaintiff has never produced title or evidence showing right of possession, his conversion claim is without merit.

Notwithstanding this fact, some other key pieces of evidence must be noted. Ernest Richards claims he spent $30,000.00 of his own money to purchase the equipment to which he is claiming ownership. He claims he withdrew this money from his IRA account. Plaintiff's IRA account statements show he withdrew this money prior to even being employed by Octane. Furthermore, Plaintiff's bank statements show the money he withdrew from his IRA account was spent prior to his alleged purchase of the equipment at issue.

The original location of Ernie Richards' alleged property prior to its purchase is also worth noting. Plaintiff claims he did not see the equipment until it was delivered to a job site. Joseph Dugan, who allegedly sold the equipment to Plaintiff, claims the equipment was at his residence and that Plaintiff looked over the same prior to its purchase. Plaintiff also maintains he did not retrieve certain equipment from a well pad site near Middlebourne, West Virginia. Witnesses place Plaintiff at a well pad site in December of 2017. Witnesses also testified Plaintiff loaded over two-thousand feet of piping at this well pad site. Plaintiff denied ever doing so.

As for Ernie Richards' claim that his final pay check was not timely, the Defendant will show Ernie Richards was not working for Octane during this time frame. Rather, evidence shows he was working for Water Transfer Solutions during this time frame. As such, the Defendant will show Ernie Richards never earned his final paycheck. Accordingly, the Defendant will show a violation of the WPCA did not occur.

According to *Wolfe v. Adkins*, 229 W.Va. 31, 38, 725 S.E.2d 200, 208 (W.Va. 2011), the only manner in which Ernie Richards could be entitled to payment for unused PTO is if Octane made an express agreement with him for such a payment. The Defendants will prove they never agreed to pay unused PTO unless employees provided two-weeks' notice. On this note, *Gress v. Petersburg Foods, LLC*, 215 W.Va. 32 (W.Va. 2003), dictates that a consistently applied unwritten employment policy regarding the payment of fringe benefits could support an employer's defense against a WPCA suit. The Defendant will prove it has always operated under a policy, whether written or unwritten, that only employees who provided two-weeks' notice of their intention to leave employment with Octane would be paid their unused PTO. Proof supporting Octane's policy prior to Octane's implementation of his Employee Handbook shows Octane consistently applied its policy. Specifically, from Octane's inception until June 25, 2018, when the Employee Handbook was provided to Octane employees, a total of forty-three (43) Octane employees resigned or were terminated from employment. Only one Octane employee provided two-weeks' notice of their resignation. As this employee provided the necessary two-weeks' notice, this employee received payment for their unused PTO. Furthermore, as the other forty-two employees did not provide two-weeks' notice prior to their resignation, they did not receive payment for unused PTO.

**(5) <u>A brief summary of the material facts and theories of liability or defense:</u>**

*A) Plaintiff:*

Plaintiff Ernest Richards is bringing several claims against Defendant in this matter. First, he is bringing a claim for conversion regarding items that he bought from Joe Dugan for use on Octane projects. This equipment included several lengths of pipe along with other equipment for the purposes of water transfer. Upon his separation from employment with Octane, Richards has requested these items back and Octane has continually refused to provide them. These items were purchased over five years ago now and have suffered wear and tear on Octane's lot. Furthermore, the present day value of these items have changed and even if they are returned to Richards he should be entitled to their present day value.

Finally, Plaintiff Ernest Richards is bringing a claim under the West Virginia Wage Payment and Collection Act. There are two separate occasions where he was not paid his wages and/or required benefits while he worked at Octane. First, Ernest Richards was not timely provided with his last paycheck for his final pay period at Octane until June 5, 2018, after his attorneys contacted Octane and demanded payment. West Virginia Code § 21-5-4(c) requires an employee's final paycheck to be delivered on the next regular pay day after separation from employment. This date of his final payment is well after the date required by the WPCA and Richards is entitled to compensation in attorneys fees for the continued pursuit of what it cost him for him to receive his final paycheck.

Second, Ernest Richards was not paid for the weeks of vacation that he did not use during his time at Octane. In response, Octane claims that it had a policy that employees had to give two-weeks notice before they could receive a payout of their earned vacation pay. However, Octane did not have an employee handbook finalized while Rick was working at Octane, nor was

a copy of this policy placed anywhere for any employee to see. Furthermore, Octane's HR Manager and attorney had previously represented to the West Virginia Division of Labor that it had no policy related to the payout of earned vacation time.

West Virginia Code § 21-5-9(3) states that an employer must "[m]ake available to his employees in writing or through a posted notice maintained in a place accessible to his employees, employment practices and policies with regarding to *vacation pay*, sick leave, and comparable matters." (emphasis added).  Furthermore, it has been held that "[t]erms of employment concerning the payment of unused fringe benefits to employees must be express and specific so that employees understand the amount of unused fringe benefit pay, if any, owed to them upon separation from employment.  Accordingly, this Court will construe any ambiguity in the terms of employment in favor of employees."  Syl. Pt. 2, *Isaacs v. Bonner*, 225 W. Va. 460, 694 S.E.2d 302 (2010) (citing Syl. Pt. 6, *Meadows v. Wal–Mart Stores, Inc*., 207 W.Va. 203, 530 S.E.2d 676 (1999)).  Finally, West Virginia Code § 21-5-12(b) mandates that "[t]he Court in any action brought under this article may, in the event that any judgment is awarded to the plaintiff or plaintiffs, assess costs of the action, including reasonable attorney fees against the defendant."

Octane has put forth the defense that it has a policy requiring employees to give two-weeks notice before they could be paid out their earned but unused PTO. Octane claims that it has always had this longstanding policy since its inception and that it is encapsulated in its employee handbook. However, no employee of Octane that has been deposed has heard of this two-weeks notice policy, including Octane CEO Terence Seikel. It should also be noted that Octane has claimed that its handbook was effective from April 1, 2018, when it was actually not provided to employees until July of 2018 and was never provided in final form to Ernie. Plaintiff Ernest Richards was not aware of this unwritten policy, which is a requirement for Octane's

defense. Furthermore, even if it was found that Ernest Richards was aware of such policies, he will be able to show that he did give two weeks notice of his resignation from Octane to his direct supervisor.

### B) Defendant:

### I. Ernie Richards' claims for conversion.

As for Ernie Richards' claim for conversion, one key fact is at the heart of this claim: at no point in time has Ernie Richards produced evidence proving ownership over his alleged personal belongings. According to the West Virginia Supreme Court of Appeals, "Critical to any claim for conversion, however, is title or right of possession." *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W. Va. 577, 587, 746 S.E.2d 568, 578 (W.Va. 2013). As Plaintiff has never produced title or evidence showing right of possession, his conversion claim is without merit.

Notwithstanding this fact, some other key pieces of evidence must be noted. Ernest Richards claims he spent $30,000.00 of his own money to purchase the equipment to which he is claiming ownership. He claims he withdrew this money from his IRA account. Plaintiff's IRA account statements show he withdrew this money prior to even being employed by Octane. Furthermore, Plaintiff's bank statements show the money he withdrew from his IRA account was spent prior to his alleged purchase of the equipment at issue.

The original location of Ernie Richards' alleged property prior to its purchase is also worth noting. Plaintiff claims he did not see the equipment until it was delivered to a job site. Joseph Dugan, who allegedly sold the equipment to Plaintiff, claims the equipment was at his residence and that Plaintiff looked over the same prior to its purchase. Plaintiff also maintains he did not retrieve certain equipment from a well pad site near Middlebourne, West Virginia.

Witnesses place Plaintiff at a well pad site in December of 2017. Witnesses also testified Plaintiff loaded over two-thousand feet of piping at this well pad site. Plaintiff denied ever doing so.

### ii. Ernie Richards' claims under the WPCA.

Regarding Ernie Richards' claim that his final pay check was not timely, payroll records and other documents show Ernie Richards stopped working for Octane as of April 25, 2018. On this date, Ernie Richards began receiving a salary from Water Transfer Solutions (hereinafter "WTS"): a competitor of Octane. Data from Plaintiff's work computer shows he did not send or receive any e-mails beginning on April 26, 2018. In fact, Plaintiff did not even access his computer from April 26, 2018, to May 11, 2018. Further, on May 1, 2018, Plaintiff was soliciting business on behalf of WTS from Octane's largest customer as he sent a text message which read "all, this is Ernie Richards and I now work for WTS; I'm the operations manager; I'm going to be taking calls and taking care of any operations setups or issues; if you have any questions or need anything, please feel free to call me."

According to *Wolfe v. Adkins*, 229 W.Va. 31, 38, 725 S.E.2d 200, 208 (W.Va. 2011), the only manner in which Ernie Richards could be entitled to payment for unused PTO is if Octane made an express agreement with him for such a payment. The Defendant will prove it never agreed to pay unused PTO unless employees provided two-weeks' notice. On this note, *Gress v. Petersburg Foods*, *LLC*, 215 W.Va. 32 (W.Va. 2003), dictates that a consistently applied unwritten employment policy regarding the payment of fringe benefits could support an employer's defense against a WPCA suit. The Defendant will prove it has always operated under a policy, whether written or unwritten, that only employees who provided two-weeks' notice of their intention to leave employment with Octane would be paid their unused PTO. Proof

24

supporting Octane's policy prior to Octane's implementation of his Employee Handbook shows Octane consistently applied its policy. Specifically, from Octane's inception until June 25, 2018, when the Employee Handbook was provided to Octane employees, a total of forty-three (43) Octane employees resigned or were terminated from employment. Only one Octane employee provided two-weeks' notice of their resignation. As this employee provided the necessary two-weeks' notice, this employee received payment for their unused PTO. Furthermore, as the other forty-two employees did not provide two-weeks' notice prior to their resignation, they did not receive payment for unused PTO.

**(6) <u>A single listing of the contested issues of fact and a single listing of the contested issues of law together with case and statutory citations.</u>**

**A) Contested issues of fact:**

The Plaintiff contends the following issues of fact exists in this matter:

a. Whether Ernest Richards was the owner of the pipe and equipment that is currently in Octane's possession on Octane's lot.

b. Whether Octane agreed to pay Ernest Richards for his accrued but unused PTO.

c. Whether Octane consistently applied its unwritten policy of only paying employees for their unused PTO if they provided two weeks' notice of their intention to leave their employ with Octane.

d. Whether Ernest Richards was aware of Octane's two weeks' notice policy.

e. Whether Ernest Richards gave two weeks notice of his resignation from Octane to his supervisor.

The Defendant contends the following issues of fact exist in this matter:

 a. Whether Ernie Richards was the owner of the property to which he is claiming conversion.

 b. Whether Ernie Richards performed labor or services for Octane from April 27, 2018, to May 11, 2018.

 c. Whether Octane agreed to pay Ernie Richards for his unused PTO.

 d. Whether Octane consistently applied its unwritten policy of only paying employees for their unused PTO if they provided two weeks' notice of their intention to leave their employ with Octane.

 e. Whether Ernie Richards' was aware of Octane's two weeks' notice policy.

**B) Contested issues of law:**

 **<u>The Defendants contend the following issues of law exist in this matter:</u>**

 a. The exact standard applicable to the unused PTO WPCA claim. Specifically, the Defendant has argued that *Wolfe v. Adkins*, 229 W.Va. 31, 38, 725 S.E.2d 200, 208 (W.Va. 2011) applies to Plaintiff's claim meaning the relevant inquiry is whether Octane made an express agreement with Ernie Richards to pay Ernie Richards his unused PTO.  The Defendant recognizes the Court did not agree with their argument and appears to state there are two main relevant inquiries. First, whether Octane consistently applied an unwritten policy of only paying employees for their unused PTO if they provided two weeks' notice. Second, whether Ernie Richards was aware of this policy. With that said, the Defendant is still not wholly clear which legal standard will be applied by the Court.

 b. The admissibility of communications, documents, evidence, and/or testimony related to the investigation conducted by the Division of Labor.

c. An additional contested issue of law is the post-trial determination of attorneys fees under West Virginia law, including but not limited to, the West Virginia Wage Payment and Collection Act.

**Plaintiff's contested issues of law:**

a.  The Plaintiff echoes the Defendant's concerns regarding the exact standard applicable to the unused PTO WPCA claim and would also request guidance related to the same.

b. Whether it is a requirement that the Plaintiff show title to the pipe and other equipment that he alleges Octane converted in this matter.

c.  Whether Ernest Richards is able to recover annoyance and inconvenience damages related to Octane's conversion of the pipe and other equipment that he purchased.

d. Whether the Plaintiff is required to show that he performed work for Octane in the final two weeks of his employment to be entitled to his final paycheck to be paid in accordance with the WPCA.

**(7)**          **Stipulations**

At this time, the parties have yet to come to terms with stipulations of fact for the trial of this matter. To the extent that any stipulations are reached, the parties reserve the right to amend this Joint Pretrial Order until such time as these stipulations are decided.

**(8)**   **Suggestions for the avoidance of unnecessary proof and cumulative evidence**

None at this time.

**(9)**   **Suggestions Concerning Any Need For Adopting Special Procedures for Managing Potentially Difficult or Protracted Aspects of the Trial that may involve Complex Issues, Multiple Parties, Difficult Legal Questions or Unusual Proof Problems**

None at this time.

**(10) A Statement of All Damages Claimed, Including an Itemized List of Special Damages**

*Plaintiff:*

Plaintiff Ernest Richards, II is making a claim for the following damages:

- $30,000 as a result of personal property subject to the conversion claim, including the trailer was returned to the Plaintiff during the course of the litigation, or such amount as he is able to testify to in present-day value, damages for annoyance and inconvenience of being deprived of his property, punitive damages, and any other such damages as may be available for the claim of conversion.

- $19,903.86 in accrued paid vacation, plus two times that unpaid amount as liquidated damages.

- The value of Ernest Richards' last paycheck at Octane as liquidated damages for the failure of Octane to timely pay him.

- An amount of attorney fees and costs that continue accruing through this trial, pursuant to the West Virginia Wage Payment Collection Act.

*Defendant:* In its role as Defendant, Octane and is not making a claim for damages.

**(11) A Statement Setting for a Realistic Estimate of the Number of Trial Days Required**

The parties believe that the estimate of number of days for each trial is as follows:

A.  Ernest Richards claims – Two (2) days

**(12)   Any Other Matters Relevant for Pretrial Discussion or Disposition, Including Those Set Forth in Fed. R. Civ. P. 16.**

A.  Availability of parties for trial

1.  Rick Richards and Ernest Richards:

Octane Environmental, LLC.

28

B. <u>Motion in Limine</u> - None at this time.

C. <u>Settlement Possibilities</u>

The parties engaged in mediation in this matter on September 11, 2020, but the case was not able to be resolved at this time. A second mediation occurred on November 18, 2021. Since then, no settlement negotiations have taken place in this matter.

**Respectfully Submitted,**

<u>/s/ Michael A. Secret</u>
Christopher A. Brumley, Esquire
Michael Secret, Esquire
Evan Aldridge, Esquire
Flaherty Sensabaugh Bonasso PLLC
200 Capitol Street
Charleston, WV  25301
***Counsel for Plaintiffs***

<u>/s/Kenneth L. Hopper, with permission, ESA</u>
Kenneth L. Hopper
Johnnie E. Brown
Pullin, Fowler, Flanagan, Brown, & Poe, LLC
2414 Cranberry Square
Morgantown, WV 26508
***Counsel for Defendants***

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**ERNEST RICHARDS, II,
and RICK RICHARDS,**

       **Plaintiffs,**

**v.**

                                **CIVIL ACTION NO. 1:18-CV-00158
CONSOLIDATED WITH 1-18-CV-00157
HONORABLE THOMAS S. KLEEH**

**OCTANE ENVIRONMENTAL, LLC,
an Ohio limited liability company,
TERENCE SEIKEL,
CRAIG STACY, and
JOSEPH SEIKEL,**

       **Defendants/Third-Party Plaintiff,**

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, certifies that the foregoing **Amended Joint Pretrial Memorandum**, was filed electronically with this court on this 27th day of February 2023. Notice of this filing will be sent to the following counsel of record via the Court's electronic filing system:

Johnnie E. Brown, Esquire
Kenneth L. Hopper, Esquire
Pullin, Fowler, Flanagan, Brown & Poe, PLLC
2414 Cranberry Square
Morgantown, WV 26508
*Counsel for Defendants*

                       /s/ Michael A. Secret
                       Christopher A. Brumley (WV Bar No. 7697)
                       Michael A. Secret (WV Bar No. 13044)
                       Evan S. Aldridge (WV Bar No. 13373)
                       Flaherty Sensabaugh Bonasso, PLLC
                       48 Donley Street, Suite 501
                       Morgantown, WV  26501
                       (304) 598-0788 (telephone)
                       (304) 345-0260 (facsimile)